**ATARI, INC., Plaintiff,**

v.

**JS & A GROUP, INC., Defendant.**

**No. 83 C 8333.**

United States District Court,
N.D. Illinois, E.D.

Dec. 6, 1983.

David E. Springer, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Laff, Whitsel, Conte & Saret, Charles A. Laff, Larry L. Saret, Lawrence R. Robins, Chicago, Ill., for plaintiff's intervenor.

George Gerstman, Pigott, Gerstman & Gilholly, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

This is a suit for declaratory and injunctive relief and for damages for contributory copyright infringement, patent infringement, unfair competition, and various state law torts. The plaintiff, Atari, Inc. ("Atari"), brought this suit because the defendant, JS&A, Inc., ("JS&A") sells and advertises a device called the "PROM BLASTER". The case is before the court on plaintiff's motion for a preliminary injunction on the copyright infringement claim.

*Factual Background*

Atari manufactures and sells a home computer video game system, the "2600", and game cartridges such as "CENTI-PEDE" and "PAC–MAN" for use in the 2600. In order to play the games at home, the consumer connects the Atari computer

to a television set and plugs his controls, or "joysticks", into the computer. A game cartridge, which is usually purchased separately, is then inserted into the computer. The computer program in the cartridge causes the audiovisual aspects of the game to emanate from the television. The 2600 has been a resounding commercial success.

The various game cartridges consist of a heavy plastic housing which contains an electronic circuit, or "chip", which in turn contains the game's computer program. The chips in Atari 2600 game cartridges are "Ready Only Memory", or "ROM", chips. The parties have stipulated that a ROM can neither be reprogrammed nor erased. The game cartridges sell for as much as $40 apiece.

Atari has copyrighted its video games as audiovisual works. In addition, it is seeking to register a copyright of the computer program for the CENTIPEDE game. Plaintiff's Exhibit D.

JS&A is a retailer of electronic products. It began this fall an effort to market its PROM BLASTER, a device for the duplication of those video games which are compatible with the Atari 2600 home computer. The machine has two slots, one for a 2600-compatible cartridge and one for a blank cartridge sold by JS&A for $10. In the words of JS&A's advertisements, "[y]ou simply plug in your Atari© or Activision© [1] cartridge in one slot and a blank cartridge in another, press a button and three minutes later you've created an exact duplicate." Plaintiff's Exhibit A. The PROM BLASTER sells for $119, and JS&A currently has $12,000 in inventory on hand. The defendant agreed not to fill any orders for the product pending the disposition of this motion.

JS&A markets the PROM BLASTER primarily as a means of making "back-up" copies of 2600-compatible games. The advertisements urge the consumer to protect his investment in video game cartridges which "can easily be ruined." Plaintiff's Exhibit A. The advertisements assure the public that this copying does not violate the copyright laws because "[i]n 1980, Congress passed an amendment to the copyright act that clearly permitted consumers to duplicate their cartridges" but warn that "[y]ou can't sell, lease or give away a duplicate cartridge produced from a copyrighted original that you own." *Id.* A related selling point for the PROM BLASTER is that the buyer "can make copies for [his] friends who wish to own archival copies of their favorite games and charge them for the service." *Id.*

JS&A also sells nine 2600-compatible video games of its own. JS&A grants the purchaser of a PROM BLASTER the right to copy the games, and even to sell the copies, without any limitation.

Atari alleges that any copying of its video games infringes its copyrights, even if the consumer does it for "archival purposes." Atari also contends that "[t]he purpose and effect of JS&A's acts are actively to induce, cause, and materially contribute to the making of infringing copies of ATARI's copyrighted home video games." Complaint at ¶ 5. Atari seeks a preliminary injunction against JS&A to prevent the use, advertising, offering for sale, and the sale of the PROM BLASTER and the blank cartridges.

*Discussion*

To establish its right to a preliminary injunction, Atari must show that it is likely to prevail on the merits, that it will suffer irreparable harm if the injunction does not issue, that the balance of hardships is in its favor, and that granting the injunction is in the public interest. *Midway Mfg. Co. v. Artic Intern. Co.,* 547 F.Supp. 999, 1005 (N.D.Ill.1982), *aff'd* 704 F.2d 1009 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983).

1. *Likelihood of Success on the Merits*

Atari's copyright claim against JS&A is for contributory infringement. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another,

---

**1.** Activision is one of several companies which

sell 2600-compatible video game cartridges.

**8**

may be held liable as a 'contributory' infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971) (footnote omitted). JS&A raises no issue as to its knowledge or encouragement of the use of the PROM BLASTER to copy copyrighted Atari and other 2600-compatible video games. The defendant argues instead that the copying of those games is legal and, even if it is not, the court may not enjoin the sale of the PROM BLASTER because it has other, legal uses.

█ Whether the copying of others' video games is an infringing activity is an issue the court discusses in detail below. Here, it must be noted that if JS&A is wrong, and such copying does infringe, its misinterpretation of the Copyright Act is no defense to a charge of contributory infringement. *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963, 975 (9th Cir.1981), *cert. granted,* 457 U.S. 1116, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982). Furthermore, it is not enough for JS&A to establish that the PROM BLASTER has *a* legal use. The machine must have a *substantial* noninfringing use to preclude an injunction against its sale. *Id.; accord, Midway Mfg. Co. v. Artic International Co.,* 211 U.S.P.Q. 1152, 1160 (N.D.Ill.1981).

█ The PROM BLASTER can perform only two functions: copy others' video games or duplicate JS&A's own games. JS&A argues that the later use, which is of course noninfringing, is enough. This argument fails because that use is not substantial. JS&A markets only nine games. Since they evidently went on the market with the PROM BLASTER, quite recently, no one knows if consumers want to play these games, much less copy them. Furthermore, PROM BLASTERS sell for $119. It strains credulity to assert that consumers would spend that much for a machine that could only copy JS&A's games. This capability of the PROM BLASTER is by itself insufficient to make its sale legal.

JS&A's liability as a contributory infringer thus turns ultimately on the legality of the primary use of the machine, that which

JS&A encourages with its advertisements, the duplication of others' video games. This is the machine's only substantial use, and if it is an infringing use the PROM BLASTER is fatally limited.

█ Section 106 of the Copyright Act details the exclusive rights of copyright owners, and it states in relevant part:

"Subject to sections 107 through 118, the owner of copyright under this title has the exclusive right to do and to authorize any of the following:

(1) To reproduce the copyrighted work in copies . . . ."

17 U.S.C. § 106. Absent an exception, therefore, the duplication of Atari's copyrighted games is an infringement of its rights. Atari is likely to prevail unless JS&A can establish that an exception applies. JS&A has the burden because it "claims the benefits of an exception to the prohibition of a statute." *United States v. First City National Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1966); *accord, Federal Trade Commission v. Morton Salt Co.,* 334 U.S. 37, 44–45, 68 S.Ct. 822, 827, 92 L.Ed. 1196 (1948).

The exception on which JS&A seeks to rely is the new § 117 of the Copyright Act, which was enacted in 1980 to replace the original § 117. That provision states in relevant part:

"Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:

\* \* \* \* \* \*

"(2) that any such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that the continued possession of the computer program should cease to be rightful."

17 U.S.C. § 117. This "archival exception," according to JS&A, legalizes the PROM BLASTER and its use in making back-up copies.

Apparently, no other court has interpreted § 117, and the legislative history is scant. Congress' only statement is that the section "embodies the recommendations of the Commission on New Technological Works ["the Commission"] with respect to clarifying the law of copyright of computer software." H.R.Rep. No. 96–1307 (Part I), *reprinted in* 1980 U.S.Code Congressional and Administrative News 6460, 6482.

Congress created the Commission in 1974 to study copyright problems with respect to computers and photocopying and to make recommendations for statutory changes. The Final Report of the Commission ("CONTU Report") sets forth and explains those recommendations, which Congress in 1980 adopted. "Although the Congressional action in 1980 does not appear to be supported by a legislative history, it is fair to conclude, since Congress adopted its recommendations without alteration, that the CONTU Report reflects the Congressional intent." *Midway Mfg. Co. v. Strohon*, 564 F.Supp. 741, 750 n. 6 (N.D.Ill.1983) (Will, J.).

■ The CONTU Report does provide some guidance in that it explains the limited purpose of the archival exception:

"One who rightfully possesses a copy of a program, therefore, should be provided with a legal right to copy it to that extent which will permit its use by that possessor. This would include the right to load it into a computer and *to prepare archival copies of it to guard against destruction or damage by mechanical or electrical failure.* But this permission would not extend to other copies of the program."

CONTU Report at 31 (emphasis added). The purpose of the exception is to protect the use of a copy against a particular type of risk: "destruction or damage by mechanical or electrical failure." The parties accept that this is the purpose of the exception. Plaintiff's Brief at 5; Defendant's Brief at 6. They disagree, however, as to the applicability of the exception to computer programs embodied in ROMs.

Computer programs are stored in a wide variety of media. Not all of these are subject to the same risks, and not all are subject to mechanical or electrical failure. For example, the instructions of the program can be printed on paper in a human-readable form. CONTU report at 55. That piece of paper could be burned or shredded, yet it could not be destroyed by mechanical or electrical failure. The medium of storage must, therefore, determine whether the archival exception applies. Where, and only where, a medium may be destroyed by mechanical or electrical failure, the archival exception protects the owners of programs stored in that medium by granting them the right to make back-up copies.

The parties stipulated at the December 1 hearing in this case that the programs in ROMs can be neither reprogrammed nor erased. Atari concludes from this that the programs are not susceptible to destruction or damage through mechanical or electrical failure. JS&A disagrees, and argues that ROMs can be destroyed "as a result of a wire becoming disconnected, liquid spillage, crushing, etc." Defendant's Brief at 3. In support of its argument, JS&A offered Exhibit 1, a letter from a customer who wrote that four of his cartridges "died." Defendant's Exhibit 1 at 2. The customer did not, however, specify the cause of death. This is the only evidence JS&A presented as to the nature of the danger to the ROMs, despite the court's invitation on December 1 to present expert or other testimony on this point.

The court concludes that JS&A has not met its burden of bringing itself within the § 117 exception. The dangers to ROMs presented by JS&A are *physical* dangers not unlike the risk that a handwritten computer program will be shredded accidentally. Virtually every copy of a copyrighted work, be it a book, a phonograph record, or a videotape, faces that kind of risk. Yet Congress did not enact a general rule that making back-up copies of copyrighted

works would not infringe.[2] Rather, according to the CONTU report, it limited its exception to computer programs which are subject to "destruction or damage by mechanical or electrical failure." Some media must be especially susceptible to this danger. JS&A has simply offered no evidence that a ROM in a 2600-compatible video game cartridge is such a medium.

In sum, the PROM BLASTER would have a substantial noninfringing use only if it could legally be used to make archival copies of copyrighted 2600-compatible video games. That use is legal only if the § 117 exception applies, and JS&A has the burden of showing that it does. JS&A has not done so. The court must conclude, therefore, that Atari is likely to prevail on its arguments that the exception does not apply, that the PROM BLASTER has no substantial noninfringing use, and that its sale should be enjoined.

### 2. Irreparable Harm

In seeking a preliminary injunction on its copyright infringement claim, Atari's burden to show irreparable harm is "very light." *Midway Mfg. Co. v. Artic International Co.*, 547 F.Supp. at 1014. "In fact, if the plaintiff can show probable success on the merits, the requisite irreparable injury is normally presumed." *Id.* (citations omitted).

Atari has amply demonstrated that it will suffer irreparable harm if this injunction does not issue. The development, production and marketing of its copyrighted 2600-compatible video games represents an investment by Atari of "hundreds of millions of dollars." Second Aff. of Charles S. Paul at 2. JS&A markets the PROM BLASTER primarily as a means of copying those video games, and Atari has shown that such copying is likely an infringement of its copyrights. If JS&A sells the PROM BLASTER and the buyers put it to its intended and encouraged use, it is at least a fair inference that Atari will lose some sales, even if the copies thus made merely replace damaged copies. Because consumers do the copying, Atari can never know the extent of the copying or the extent of its loss. Those lost sales constitute immediate, irreparable harm sufficient to support the issuance of a preliminary injunction.

### 3. Balance of Hardships

The balance of hardships tips in Atari's favor. Against its investment of hundreds of millions of dollars in its video games, JS&A can offer only its $12,000 investment in inventory and potential sales in an undetermined amount. Atari stands to lose much more than JS&A could hope to gain if this injunction does not issue.

### 4. Public Interest

The public interest in the protection of Atari's copyrights is the reward and encouragement of creative expression. If the defendant could legally infringe Atari's right to make and distribute copies, Atari and other producers of copyrightable material would hesitate to invest in its creation and development. The public interest in preserving the rewards for such investment and thereby encouraging it will be served by issuing this injunction to protect Atari's exclusive § 106 rights under the Copyright Act.

### Conclusion

For the reasons stated above, the court grants plaintiff's motion for a preliminary injunction. Defendant JS&A and its agents and servants will be preliminarily enjoined from selling, marketing, distribut-

---

**2.** The Copyright Act contains only three other exceptions for "archival" copying. Libraries and archives may copy an unpublished work "for purposes of preservation and security ...." 17 U.S.C. § 108(b). These institutions may also make a replacement copy of a published work that is "damaged, deteriorating, lost, or stolen, if the library or archives has, after a reasonable effort, determined that an unused replacement cannot be obtained at a fair price." 17 U.S.C. § 108(c). Finally, § 112 provides several exceptions for archival copying of various "ephemeral" works, such as the broadcast of a live performance of a copyrighted play. *See* 2 *Nimmer on Copyright* § 8.06.

ing or otherwise disposing of PROM BLASTERS. Plaintiff will prepare an appropriate order to submit to the court, and at that time bond will be fixed.