**MICRO–SPARC, INC., Plaintiff,**

v.

**AMTYPE CORPORATION, Defendant.**

**Civ. A. No. 84–1043–G.**

United States District Court,
D. Massachusetts.

Aug. 31, 1984.

Mark D. Shuman, Boston, Mass., for plaintiff.

Edward C. Saltzberg, Bigelow & Saltzberg, Woburn, Mass., for defendant.

## MEMORANDUM AND ORDER ALLOWING PLAINTIFF'S (AND DENYING DEFENDANT'S) MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

In what may be a case of first impression, we are called upon to decide whether copyrighted computer programs that appear in a magazine published by the copyright owner may be put on disks,[1] duplicated and sold to purchasers of the magazine by a third party.

---

1. A disk is a thin, circular piece of synthetic material, not unlike a 45 r.p.m. record, on which computer programs are stored electronically. When one wishes to use a program, the disk is inserted into a mechanism called a disk drive, and the computer is instructed to transfer the program from the disk into its memory.

Plaintiff, Micro-SPARC, Inc., publishes Nibble, a monthly magazine aimed at users of Apple brand computers. Each issue of Nibble, which sells for $3.25, contains twelve to fifteen computer programs that readers may type into their Apple computers and then use. Plaintiff owns the copyrights to these programs,[2] which also are offered for sale on disks to those who choose not to type in the programs themselves, a task that may entail up to 30 hours of tedious work for a single program. The programs on disks are sold by plaintiff for between $20.00 and $30.00 per program.

Defendant, Amtype Corporation, offers a "typing service" to purchasers of Nibble and other similar publications.[3] For a fee of between $7.50 and $10.00 defendant will put on one disk all the programs that appear in an issue of any of these computer magazines. As will become clear, the technique defendant uses to perform its service is significant. The programs from the magazine first are typed into a computer and then are transferred onto a "master disk." Next the programs are copied from the master disk onto blank disks, which then are sent to defendant's customers. By utilizing a master disk, defendant needs to type in each program only once.

Plaintiff claims that defendant's "typing service" constitutes a copyright infringement and seeks injunctive relief and damages. Defendant responds that a recently enacted amendment to the copyright laws, 17 U.S.C. § 117, legalizes its activities.[4] Before us now are cross-motions for summary judgment.[5] We heard oral argument and received comprehensive briefs.

The amendment on which defendant relies states in pertinent part:

Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:

(1) that such a new copy is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or

(2) that such copy or adaption is for archival purpose only . . . .

17 U.S.C. § 117.

Both parties agree that a Nibble purchaser is "the owner of a copy of a computer program" appearing in the magazine. The issue is whether he may "authorize the making of another copy" by the defendant under either subsection (1) or (2).

■ Subsection (1) permits the creation of a copy for a strictly limited purpose: "as an essential step in the utilization of the computer program in conjunction with a machine." Apparently, no other court has interpreted this provision. In our opinion,

---

**2.** The programs appearing in Nibble are written and submitted by freelance programmers who transfer their rights in the programs to Nibble and in return receive between $200 and $500 per program plus royalties.

At issue in this case are the programs appearing in Volume V, Issues 2 and 3 of Nibble (February and March 1984). Plaintiff recorded the transfers covering these programs with the Copyright Office, 17 U.S.C. § 205(d), and received copyright registration certificates for them, which "constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Defendant has submitted no evidence to rebut the presumption of validity created by § 410(c).

**3.** Defendant maintains, and plaintiff does not seem to contest, that its "typing service" is provided only to purchasers of the magazines. Defendant's sales literature says as much. Defendant also requires its customers to sign a declaration that they have purchased the magazine in which the ordered programs appear. Furthermore, defendant does not supply any instructions with the programs, so its customers need the magazines, which contain the instructions, to use the programs.

**4.** As owner of the copyright, plaintiff has the exclusive right, subject to 17 U.S.C. § 117, to copy or sell copies of the programs appearing in Nibble. 17 U.S.C. § 106. "Absent [§ 117], therefore, the duplication of" plaintiff's copyrighted programs "is an infringement of its rights." Atari, Inc. v. JS & A Group, Inc., 597 F.Supp. 5, 8 (N.D.Ill. 1983)

**5.** The court previously denied plaintiff's motions for a temporary restraining order and a preliminary injunction.

it refers to the placement of a program into a computer—or, in the jargon of the trade, the "inputting" of it. Inputting a computer program entails the preparation of a copy. 2 *Nimmer on Copyright* ¶ 8.08.[6] Because one must input a program in order to use it, each use constitutes a potential copyright violation. The legislative history of § .117 indicates to us that subsection (1) was enacted simply to permit the rightful possessor of a program to input and use it:

> [T]he placement of a work into a computer is the preparation of a copy .... One who rightfully possesses a copy of a program, therefore, should be provided with a legal right to copy it *to that extent which will permit its use* by that possessor. This would include the right to load it into a computer ....

*Final Report of the National Commission on New Technological Uses of Copyrighted Works* ("CONTU Report") at 31 (emphasis added).[7] For example, subsection (1) permits an owner of Nibble programs, whether in the magazine or on disks, to input and use them, by either manually typing in the programs from the magazine or electronically transferring them in from the disks.

■ The permission to copy stated in subsection (1) is strictly limited to inputting programs. That is the import of the phrase "essential step in the utilization of the computer program" that appears in the statute and the phrase "to that extent which will permit its use" that appears in the CONTU Report. Subsection (1) does not permit a Nibble purchaser to authorize the defendant to put the programs on a disk for him. In so doing the defendant does not input the programs. It instead creates a disk copy that the *purchaser* then uses to input the programs. Subsection (1) permits the second "input copy" created by the purchaser, not the first disk copy created by the defendant.

■ In the alternative, defendant relies on the "archival exception" in subsection (2), the purpose of which is "to protect the use of a copy against a particular type of risk: 'destruction or damage by mechanical or electrical failure.'" *Atari, Inc. v. JS & A Group, Inc.*, 597 F.Supp. 5, 9 (N.D. Ill. 1983), quoting CONTU Report at 31. Subsection (2) thus permits a Nibble purchaser who, under subsection (1), types in the programs himself to create a disk copy. This is because the typed-in program, which is contained in the computer's memory, is subject to "destruction or damage by mechanical or electrical failure."[8] Subsection (2) does not, however, permit the purchaser to authorize the defendant to put Nibble programs on disks for archival purposes. This is because the purchaser has not first created a "destructable" or "damageable" copy. When a Nibble purchaser orders a disk from the defendant, he possesses the programs as they appear in the magazine. In this printed form, the programs are susceptible only to physical dangers, such as accidental shredding. However, "virtually every copy of a copyrighted work, be it a book, a phonograph record, or a videotape, faces that kind of risk. Yet Congress did not enact a general rule that making back-up copies of copyrighted works would not infringe. Rather, according to the CONTU Report, it limited its exception to computer programs which are subject to 'destruction or damage by

---

6. To illustrate why inputting a program creates a copy, suppose a Nibble program is either typed in manually from the magazine or transferred in electronically from a disk. After the input is complete, the user has two copies of the program. One is contained in either the magazine or the disk; the other is contained in the computer's memory. This second copy can be displayed on the computer's screen, printed on its typewriter, or transferred onto a blank disk.

7. The CONTU Report, which was the result of a six year congressional study of copyright law and computer software, comprises the entire legislative history of § 117. *Atari, supra* at 9.

8. We need not decide whether one who purchases a program disk from the plaintiff also may make archival copies. Because the program is stored on a disk instead of in the computer's memory, it is less susceptible to destruction or damage by mechanical or electrical failure; however, it is not completely immune from such a mishap.

mechanical or electrical failure.' " *Atari, supra* at 10.

■ Because defendant's activities do not fall within the exceptions provided in § 117(1) and (2), we hold that defendant's copying of the programs appearing in Nibble infringes upon plaintiff's copyright.[9] Plaintiff's motion for summary judgment therefore is allowed and defendant's denied. Defendant, its officers, agents, servants and employees are hereby enjoined from copying, publishing, selling and distributing all or a part of the contents, including computer programs, contained in Volume V, Issues 2 and 3 of Nibble magazine.

On or before September 24, 1984 plaintiff shall submit an affidavit and supporting memorandum setting forth its claim for damages. Defendant shall respond on or before October 16, 1984.

**9.** Defendant argues for a liberal reading of § 117, pointing to recent technological and marketing developments in the home computer industry. Congress did not envision, defendant says, publications such as Nibble when it enacted the statute. Even if this is true, however, limiting the right of magazine purchasers to copy published home computer programs is fully consistent with Congress's stated purpose of providing the copyright protection "necessary to encourage the creation and broad distribution of computer programs in a competitive market." CONTU Report at 27.