**ENGINEERING DYNAMICS, INC.**

v.

**STRUCTURAL SOFTWARE, INC.
and S. Rao Guntur.**

Civ. A. No. 89–1655.

United States District Court,
E.D. Louisiana.

Aug. 29, 1991.

Harry Simms Hardin, III, Thomas K. Potter, III, Jones, Walker, Waechter, Poitevent, Carrère & Denègre, New Orleans, La., Roger L. Maxwell, Thomas L. Cantrell, Johnson & Gibbs, Dallas, Tex., for plaintiff.

Denya Guntur, Gary L. Bush, Al Harrison, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

Plaintiff Engineering Dynamics, Inc. ("EDI") filed suit against defendants Structural Software, Inc. ("SSI") and S. Rao Guntur for copyright infringement, trade dress infringement, and unfair competition regarding computer software and accompanying manuals used by engineers to analyze structures. The matter was tried before the bench from March 7th to March 12th, 1991. The final post trial brief was filed in June 1991. After considering the post trial briefs and proposed findings of fact and conclusions of law submitted by the parties, the court makes the following findings and conclusions:

## FINDINGS OF FACT

*Background Information*

(1) Plaintiff EDI is a Louisiana corporation with its principal place of business in Louisiana. It creates, leases and updates structural analysis computer software, in particular a suite of programs called SACS. SACS was developed for use on a main-frame computer, but is now also compatible for use on a personal computer. (Angehr testimony, p. 40). The company's owners and officers are David Garland, Jim Angehr, and John Fowler.

(2) Defendant SSI is a Texas corporation with its principal place of business in Texas. It, too, creates and markets structural software and its main product is StruCAD*3D ("StruCAD")[1]. SSI is operated and 80% owned by S. Rao Guntur. StruCAD operates only on a personal computer. (Guntur testimony, p. 435).

(3) Both SACS III and StruCAD are computer programs designed to solve engineering problems incident to the analysis of structures and were created primarily for use by engineers designing offshore structures.

(4) During the late 1970s a company called Synercom, Inc., which marketed a program called STRAN, sued EDI for copyright infringement of its manuals and input formats. The court held that the input formats were "idea" rather than "expression," and thus uncopyrightable. It also ruled that the manuals were protected and that EDI had infringed them. *Synercom Technology, Inc. v. University Computing Co.*, 462 F.Supp. 1003 (N.D.Tex.1978) ("*Synercom*"). Synercom and EDI subsequently entered into a stipulation or settlement agreement providing in part that a manual called SACS III, which was drafted by EDI to replace the infringing SACS II manual, did not violate Synercom's copyrights. (Px 392).

(5) In about 1986, defendants here, Guntur and SSI, purchased a program called SAP IV. Defendants used SACS III User's Guide, the Joint Can. Design II and Seastate User's Manual to develop a new program from the SAP IV. The new program was compatible with personal computers. The user/engineer works with a personal computer in a process in which information is able to be put into the program via a number of screen displays. (Guntur testimony, p. 458–465).

---

1. The program was initially named Aurora, but was re-named StruCAD*3D shortly thereafter. The programs of SSI will be referred to as StruCAD throughout this opinion.

(6) In contrast, SACS initially operated on a mainframe computer to which user/engineers had access through data service centers. Some time after StruCAD came on the market, SACS released a structural analysis program that could be used on a personal computer.

## A. Copyright Infringement

(7) SACS has been on the market since about 1975. (Fowler testimony, p. 299; Garland testimony, p. 90). SSI put its software product, StruCAD, on the market around 1986. StruCAD made structural analysis accessible on a personal computer before SACS had that capability. (Guntur testimony, p. 445). Both programs are accompanied by manuals which are comprised of pictures, diagrams, text, charts, illustrative examples, and flowcharts.

(8) EDI claims defendants infringed several of its manuals in the development and marketing of StruCAD, namely: the SACS III Users Guide, SACS IV User's Guide, Joint Can Design II, and Seastate User's Manual (collectively referred to as "the SACS manuals," "SACS III" or "SACS"). (Px 1, 2, 3, 4, 9, 245, 12, 14). EDI also claims that defendants infringed its copyright in the "user interface," which is comprised mainly of the input and output reports.

(9) The manuals included notice of copyright on their covers (Angehr testimony, pp. 77–78, Px 9, Px 245, Px 12, Px 14). EDI's contracts with users and data service centers contains provisions to protect EDI's proprietary rights. (Garland testimony, pp. 149–152; Dx 20, Dx 21, Dx 22, Dx 24).

(10) EDI registered the manuals with the United States Copyright Office shortly prior to filing this suit, in February, 1989. (Px 1–3), except SACS IV which was registered in July, 1990 (Px 4). Joint Can Design II, SACS III User's Guide, and Seastate User's Manual are copyrighted for the "entire text," and SACS IV is copyrighted for "new text." Px 1–4.

(11) The copyright applications do not reveal the derivation of SACS III from SACS

II, nor do they discuss the *Synercom* litigation.

(12) In part due to their common ancestry in Synercom's STRAN computer program, the text and diagrams in the StruCAD manual are substantially similar to those in the SACS manual, to the point of being nearly identical. (Px 203–Px 210; Guntur testimony 431–2; 436–7). The more than coincidental similarity of the two manuals is further evidenced by the reproduction of engineering errors in the SACS manual and in the StruCAD manual. (Px 165, Garland testimony, pp. 171–2, 175).

(13) Some elements of SACS's design derive from Synercom's product STRAN. *Synercom*, 462 F.Supp. at 1012. However, EDI redesigned the SACS manual in such a way to be no longer infringing on STRAN. As a result of that redrafting, the SACS III Manual was reviewed by Synercom itself for infringement, and is thus a new, independent, and original work.

(14) The key difference between SACS and StruCAD is that StruCAD was first to introduce a structural analysis program to the offshore market which can be used on a personal computer.

## B. Trade Dress

(15) The SACS manuals and user interface reflect a continuously evolving product; EDI has expended considerable time, energy, and financial resources on improving their product. The result has been a look and feel of SACS which some engineers recognize and associate with EDI.

(16) SACS and StruCAD have user interfaces which are substantially similar. In contrast, other computer programs in the relevant market, ASAS, DAMS, STRUDL, NASTRAN, ANSYS, SESAM, STARDYNE, OSCAR, SAP 81, and SPACE IV employ user interfaces different from SACS and StruCAD. (Px 44, Px 45, Px 41, Dx 37, Dx 38, Dx 40, Px 42, Px 43, Px 46).

(17) Given the relatively insular and sophisticated nature of the offshore engineering community (the apparent main users of SACS and StruCAD) they are not prone to confuse the two software products. (Fowler testimony, pp. 319–320).

## C. Unfair Trade Practices

(18) In 1989, defendants attempted to register with the Louisiana Secretary of State to use EDI's corporate name for their own purposes. (Px 100, Px 101, Guntur testimony, 397–400). Defendants also obtained the assistance of third party employee Mahendra Vora who had experience with elements SACS to develop those same elements for StruCAD. (Fowler testimony, pp. 307–319).

(19) By late 1986 EDI and StruCAD were directly competing for clients (Guntur Dep. testimony (Px 146), p. 61–62). This early version of StruCAD had formats "very, very close" to SACS's formats. (Guntur testimony, p. 437).

(20) StruCAD was designed to work on a personal computer. (Guntur testimony, p. 435). EDI began to lease a version of SACS which was compatible with a personal computer in 1987. (Garland testimony, p. 142). Engineer/users could recognize the SACS user interface and there was convincing testimony that users are likely to confuse SACS and StruCAD. (Gehring testimony, pp. 333–4 and 336; Guntur testimony, 429–430, 432).

(21) There is a possibility of confusion between SACS and StruCAD. Taking into account the sophisticated market of engineers in the offshore marketplace, and SSI's marketing of a structural analysis program compatible with a personal computer prior to EDI's release of a version of SACS that was compatible with a personal computer, the facts suggest but do not make conclusive that defendants were "passing off" their product, StruCAD, for the competition, SACS.

## D. Damages

(22) Plaintiff demonstrated at trial that its gross profits in the years from 1984 to 1989 were as follows: $769,563 in 1984; $1,001,425 in 1985; $543,968 in 1986; $560,-439 in 1987; $568,505 in 1988; and $731,-743 in 1989. (Px 216–221).

## CONCLUSIONS OF LAW

(1) This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that this civil action arises under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. and the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. The court has jurisdiction of the state unfair competition claims pursuant to 28 U.S.C. § 1338(b) and jurisdiction of the remaining claims under the doctrine of pendant jurisdiction. The court also has jurisdiction under 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## A. Copyright

■ (2) To succeed in its claim for copyright infringement, plaintiff must show that (1) it had ownership of a valid copyright and (2) the defendants infringed that copyright by copying the protected material. *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir.1981).

(3) On January 1, 1978, the 1976 Copyright Act became effective and replaced the prior 1909 Copyright Act. Because the first publication of SACS III occurred after January 1, 1978, the 1976 Copyright Act governs. 17 U.S.C. § 101 *et seq.* Thus the law in this case may differ in some regards from the law as applied by Judge Higginbotham in *Synercom Technology, Inc. v. University Computing Co.*, 462 F.Supp. 1003 (N.D.Tex.1978).

■ (4) The Copyright Act of 1976, as amended, applies to "original works of authorship fixed in any tangible medium of expression[.]" 17 U.S.C. § 102. Originality, copyrightability, and compliance with statutory formalities are relevant to determining the enforceability of a copyright. *Plains Cotton Co–Op v. GoodPasture Computer Service*, 807 F.2d 1256 (5th Cir. 1987), cert. denied, 108 S.Ct. 80 (1987). Originality differs from novelty in the patent context in that originality consists of the independent creation of a work: "a work must not consist of actual copying." *Durham Industries, Inc. v. Tomy, Corp.*, 630 F.2d 905, 910 (2d Cir.1980). Moreover, "in copyright law 'originality means little more than a prohibition on copying'."

*Donald v. Zack Meyer's T.V. Sales and Service,* 426 F.2d 1027, 1030 (5th Cir.1970), cert. denied 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971) (citation omitted). Although SACS and StruCAD share a common ancestry Synercom's product, STRAN, SACS is significantly distinct from STRAN. This distinction is evidenced by Synercom's review and approval of SACS III as a non-infringing work. (Px 392, Exhibit A, Garland testimony p. 92–94). Thus SACS III is an original and copyrightable work.

■ (5) Materials may be protected by copyright laws if they are appropriately marked with a notice of copyright and properly registered with the copyright office. 17 U.S.C. §§ 401(a), 405 and 410. Plaintiff met the notice requirements of the Copyright Act by affixing to every manual a notice of copyright, its ownership, and the relevant date.

(6) A certificate of copyright registration is prima facie evidence of the validity of the copyright if the registration is made within five years of first publication of the work in question. If the registration is obtained later than five years after first publication, then the evidentiary weight accorded the certificate is within the court's discretion. 17 U.S.C. § 410(c). Here plaintiff registered its copyright for the SACS III manuals in February 1989, a decade after its first publication. The date of SACS IV is immaterial since its registration was apparently within five years of first publication, creating prima facie evidence of EDI's valid copyright in its "new text." EDI has shown the originality of SACS III in light of the commercially motivated determination by Synercom that the SACS III manual is not an infringement of the Synercom product.

■ (7) Defendants' contentions that the copyright is invalid due to imperfections in the registration application are insufficient to invalidate EDI's copyright in its SACS manuals. Plaintiff's failure to disclose the outcome of the *Synercom* case, and the similarity of SACS II to SACS III to the Copyright Office, do not amount to "deliberate misrepresentation," but are, rather, "innocent misstatement[s]."

*Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989).

■ (8) The valid ownership of a copyright in SACS III established, we must determine the extent of the SACS III manual which is copyrightable as a matter of law. Plaintiff urges the court to follow the law of another jurisdiction and find that user interfaces (input and output reports) are copyrightable since they have evolved from ideas to expressions in the decade since Judge Higginbotham concluded that input formats were ideas rather than expressions, and thus not copyrightable. See *Lotus Dev. Co. v. Paperback Software, Int'l.,* 740 F.Supp. 37 (D.Mass.1990). While the reasoning of *Lotus* may be persuasive, particularly given the extraordinary expansion of the computer industry since *Synercom* was decided in 1979, this court is bound to follow the law of the Fifth Circuit. Under the law of this circuit, formats are not copyrightable. *Plains Cotton Co-Op v. GoodPasture Computer Service,* 807 F.2d 1256, 1262 (5th Cir.1987), cert. denied 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987).

(9) *Plains Cotton* is not distinguishable on the grounds that the Circuit was reviewing the district court's denial of a preliminary injunction. While the Circuit reviewed the case on the "abuse of discretion" standard accorded to appellants regarding preliminary injunctions, it also explicitly rejected *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222 (3d Cir.1986), cert. denied 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987), on the grounds that "both programs ... convey the same standardized information to the user." *Plains Cotton,* 807 F.2d at 1262, n. 4. Here, as well, both programs provide essentially the same standardized information to the user. Further, the Circuit describes Judge Higginbotham's analogy to the hypothetical development of gearstick patterns as "powerful." In this context, the district court is bound to follow what it perceives to be the binding precedent of this circuit, despite any inclination to agree that the "forms" of input in the

1970s were probably less distinct from one another than they are in the 1990s.

(10) Thus the scope of allegedly infringed materials includes the text, pictures, diagrams, illustrative examples and flow charts depicted in the manuals, but not the input and output formats since the law of the circuit provides that user interface in the form of input and output reports is not copyrightable.

(11) Having met its burden of showing ownership of a valid copyright, EDI must next prove copying. Copying is evidenced by defendants' access to the alleged infringed work, and substantial similarity between the two works. *Schuchart & Assoc., Professional Engineers v. Solo Serve Corp.*, 540 F.Supp. 928 (W.D.Tex. 1982).

(12) Access here is admitted. (Pretrial Order § 7.4).

(13) Substantial similarity between two works is determined by evaluating whether the idea is similar, and whether the expression is similar. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977). Here the idea is operating instructions for a structural analysis computer program, and the expression is in the text, pictures, diagrams, charts and flowcharts in the manuals. Defendants have admitted to copying substantial segments of SACS III manuals, and EDI established further copying. (Px 181, Px 185, Px 186, Guntur testimony p. 406).

(14) Moreover, "one of the most significant evidences of copying is the copying of errors." *United Telephone Co. of Missouri v. Johnson Pub. Co.*, 671 F.Supp. 1514, 1521 (W.D.Mo.1987), aff'd, 855 F.2d 604 (8th Cir.1988). Defendants reproduced errors in StruCAD from SACS III manuals. (Px 165, Garland testimony p. 171–2). Plaintiff established, in part through Dr. Guntur's candid testimony, that SACS III and StruCAD are substantially similar. Thus plaintiff proved all the elements of copyright infringement.

(15) Had defendants copied only a small part of EDI's copyrighted manuals, they would still be liable, but the extent of copying would be relevant to a determination of damages. *Central Telephone Co. of Virginia v. Johnson Pub. Co.*, 526 F.Supp. 838 (D.Colo.1981). Although the copying was substantial, the adaptation of StruCAD onto the personal computer prior to EDI's adaptation of SACS into that format was a marked innovation on defendant's part. Thus, while part of the damages suffered by EDI is attributable to defendant's improper use of EDI's copyrighted manuals, some part of these damages is also due to the changes in the computer market and the lag time between the availability of personal computers for structural engineering and EDI's applications of the available technology. Thus the amount of damages due to EDI for the infringement is reduced by the consideration of Dr. Guntur's introduction of the structural analysis program on a personal computer.

### B. Trade Dress

(16) Section 43(a) of the Lanham Act provides a remedy for a broad range of deceptive marking, packaging, and marketing of goods or services in commerce. 15 U.S.C. § 1125(a). Liability is based on confusion or deception as to the origin of goods or services, or misrepresentation of the nature of goods or commercial activities. The "trade dress" of a product involves that product's total image, which may be protectable as an unregistered trademark if it is nonfunctional, distinctive, and has acquired secondary meaning in the marketplace. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985). The purpose of the Lanham Act is to prevent unfair competition by enabling producers to differentiate their products from those of others and to protect consumers against deceptive designations of origins of goods. *Lacoste Alligator, S.A. v. Bluestein's Men's Wear, Inc.*, 569 F.Supp. 491 (D.S.C. 1983). Plaintiff contends defendants' copying of SACS improperly appropriated the input and output reports, the manual and the look and feel of SACS, all in violation

**584**

of the Lanham Act. Even if the origin and trade dress of SACS is recognizable by some engineers, the market itself is sufficiently sophisticated that such confusion is questionable. StruCAD's initial compatibility with personal computers, which SACS achieved some time later, also militates to some extent against the likelihood of confusion between StruCAD and SACS. Accordingly, protectable trade dress does not reside in the input protocols, output reports, manuals, or look and feel of SACS. Defendants have not violated the Lanham Act.

### C. Unfair Competition

■ (17) Louisiana law proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). "The essence of unfair competition in Louisiana is passing off one's product as that of another." *Louisiana World Exposition, Inc. v. Logue*, 221 U.S.P.Q. 589, 594, 1983 WL 224 (E.D.La. 1983). While there is substantial similarity between SACS and StruCAD, plaintiff has not established an actual likelihood of confusion between the two products. Thus defendants SSI and Guntur are not liable for unfair competition.

### D. Remedies

(18) Plaintiff has met its burden of proof on its claims for copyright infringement of the Joint Can II, Seastate, SACS III, and SACS IV manuals; the text, drawings, pictures, and diagrams, charts and flow charts listed therein were infringed by defendants SSI. The Copyright Act provides for a wide range of remedies for copyright infringement, including injunction, impounding and disposition of infringing articles, damage and profits, and costs and attorneys fees. 17 U.S.C. §§ 502, 503, 504, and 505.

■ (19) Plaintiff seeks actual damages and profits reaped by defendants as a result of the infringement, pursuant to 17 U.S.C. § 405(b). Any profits added to an award of actual damages are profits not already taken into account in calculating the actual damages. *Id.* Actual damages reflect "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1118 (2d Cir.1986).

■ (20) I find that Plaintiff demonstrated actual damages in the amount of $250,000. (Px 216–221). This figure takes into account the decrease in gross profits attained by EDI from 1985 to 1989 and the potential costs of converting SACS from a program run on a mainframe to one which is compatible with a personal computer. The court also considered that EDI's actual losses may be due to loss of customers to the defendants and that an award of the profits accrued by SSI and Guntur poses a potential duplication; the defendants' ingenuity in entering the market with a structural engineering program compatible with a personal computer before EDI did; and that time is or was of the essence in a market known for extraordinarily rapid technical advances. This award is made in recognition of the policy behind the Copyright Act to both reward and encourage creative expression. See, *Atari, Inc. v. JS & A Group, Inc.*, 597 F.Supp. 5, 10 (N.D.Ill.1983).

■ (21) In addition to damages, the court may, at its discretion, enjoin further infringement of the work in question. 17 U.S.C. § 502(a). EDI contends that the infringement is too extensive to be remedied by redrafting, as EDI did to remedy its infringement of Synercom's copyright. However, because the user interface appears not copyrightable in this Circuit, the task seems analogous to that accomplished by EDI in response to the *Synercom* case. Accordingly, defendants are enjoined from distributing the StruCAD user's guide, and EDI is instructed to cooperate with SSI and Guntur in reviewing a new StruCAD manual with the goal of fashioning one which is non-infringing.

(22) Because of the originality and innovation of making a structural analysis program compatible with a personal computer, the court declines to order the destruction

or other disposition of all infringing copies pursuant to 17 U.S.C. § 503(b). Further, because we have found no liability under the Lanham Act, the court declines to order the defendant to file a writing evidencing compliance with an injunction issued for violation of section 34(a) of that Act.

(23) Plaintiff also urges the court to impose personal liability on Guntur as partial owner of SSI and, plaintiff contends, tortfeasor. *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19 (5th Cir.1968). Guntur is the 80% owner of SSI, and apparently personally designs and markets StruCAD. However, the court declines to "pierce the corporate veil" on the justification presented by plaintiff for doing so. Accordingly, Judgment is to be entered against SSI alone and claims against S. Rao Guntur individually should be dismissed.

## CONCLUSION

Consistent with this Opinion, EDI is directed to fashion a Judgment awarding it $250,000 in actual damages, and enjoining SSI from marketing StruCAD with the StruCAD manual until the parties can agree that a new draft is non-infringing.