APPLE COMPUTER, INC., a California corporation, Plaintiff,

v.

FORMULA INTERNATIONAL, INC., a California corporation, Defendant.

No. CV 82–5015–IH.

United States District Court, C.D. California.

Oct. 1, 1984.

**618**

Brown & Bain by Lois W. Abraham, Palo Alto, Cal., and Blakely, Sokoloff, Taylor & Zafman by Edwin H. Taylor, Beverly Hills, Cal., for plaintiff.

Thomas E. Schatzel by Bruce G. Spicer, Santa Clara, Cal., Patterson, Schiada & Munt by James Schiada, Whittier, Cal., and Ku, Wong, Yee & Fong by H.G. Robert Fong, Los Angeles, Cal., for defendant.

## OPINION RE CONTEMPT

IRVING HILL, District Judge.

### HISTORY OF THE MATTER

Plaintiff, Apple, is the manufacturer of the nationally advertised Apple Computer and is the owner of the copyright to a large number of computer programs embodied therein. Defendant, Formula, sells computer kits from which a computer can be assembled. The complaint charges that Formula's computer kits constitute copyright infringement because they contain unauthorized copies of many of Apple's copyrighted computer programs. It further charges unfair competition by way of Formula's use of the name "Pineapple" as a trademark for its computer. The parties and the types of business conducted by each of them are more fully described in an opinion filed April 25, 1983, published at 562 F.Supp. 775 (C.D.Cal.1983). In that opinion the Court granted a preliminary injunction to Apple which is found as an exhibit to that opinion. The preliminary injunction was affirmed on appeal, 725 F.2d 521 (9th Cir.1984).

The preliminary injunction prohibits Formula from copying any of Apple's copyrighted computer programs and from selling any computer components containing any copies of Apple's copyrighted programs. The specific language of the injunction which is germane to the instant case is set forth below.

After the issuance of the preliminary injunction, Formula continued to sell computer kits and commenced to sell some assembled computers as well. But Formula changed the trademark of its computers from "Pineapple" to "Pinecom". Apparently Formula also modified its computer kits and computers so as to eliminate from them any of Apple's copyrighted computer programs. Apple apparently concedes that Formula's modified computers and unassembled computers (the computer kits) have not, in and of themselves, directly violated the injunction.

The instant proceeding is a motion filed by Apple on December 9, 1983, asking that Formula be found in contempt of the preliminary injunction. What triggered this contempt motion is that Formula, on each occasion that it sold a computer or computer kit after issuance of the preliminary injunction, included in the sale what it

called a "ROM Set".[1] The ROM Set consists of a Wong diskette (which will be described later), three silicon chips, and an instruction manual. On the silicon chips Formula has recorded in permanent form an exact copy of Apple's copyrighted Applesoft and Autostart computer programs. The obvious intent is for the buyer to insert the silicon chips into Formula's computer, an act easily done, which leaves the copied Apple programs as a permanent and integral part of Formula's Pinecom computer.

The provisions of the preliminary injunction which are relevant to the instant proceeding enjoin Formula from:

(b) Copying any of Plaintiff's copyrighted computer programs as embodied in silicon chips, ROMs or diskettes. Without limiting the foregoing, there shall be expressly included in this subparagraph (b), Plaintiff's Autostart ... [and] Applesoft ....

(c) Importing, distributing, selling or advertising for sale any silicon chips, ROMs or diskettes which contain any copy of any of Plaintiff's copyrighted computer programs.

The contempt motion was argued January 16, 1984 and January 23, 1984. A tentative decision, finding that Formula's production and sale of the ROM Set constituted contempt of court, was orally announced from the bench on January 23, 1984. Following further briefing and argument, the tentative decision was adopted as the Court's final decision on February 8, 1984. No written opinion was issued at that time and no formal contempt judgment was filed at that time because the Court required further factual information and further argument from counsel before deciding what sanctions and penalties should be imposed.

On June 1, 1984, the Court filed a written order formally adjudicating the existence of the contempt and imposing sanctions for it. A copy of that order appears as an exhibit at the end of this Opinion.

1. ROM is an acronym for Read Only Memory.

Because of the importance and novelty of the question presented, counsel has asked that an opinion be written on the merits of the contempt issue. What follows is in answer to that request. It takes the place of the oral decision announced from the bench on January 23, 1984 and February 8, 1984.

## DISCUSSION

■ On its face, Formula's manufacture and sale of these silicon chips is a clear violation of the provisions of the preliminary injunction which prohibits "selling ... silicon chips ... which contain any copy ... of Plaintiff's copyrighted computer programs".

Formula's purpose for including these chips in a sale of its computers is obvious. The insertion of those silicon chips containing Apple's copyrighted programs, into one of Formula's Pinecom computers, has the effect of making Formula's computer, in important respects, the equivalent of the Apple II computer. With the chips inserted, the operation of Formula's computer becomes functionally equivalent to that of the Apple in that various programs designed for the Apple computer can run on the Formula computer.

Formula contends that Section 117 of the Copyright Act, 17 U.S.C. § 117, precludes its being held in contempt. Prior to the filing of the instant contempt motion, counsel for Apple and Formula had agreed between themselves that any activity authorized and permitted under Section 117 would not be considered to be a violation of the preliminary injunction. That understanding of counsel was affirmed in their briefing and argument of the contempt motion. The Court accepts that understanding and will construe the preliminary injunction as the parties have construed it.

Thus, the essential question in the case is whether Formula's production and sale of the silicon chips falls within the conduct permitted by Section 117.

. Section 117 of the Copyright Act provides in relevant part:

[I]t is not an infringement for the owner of a copy of a computer program to make ... another copy ... of that computer program provided:

(1) that such a new copy ... is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner ....

(2) ... [2]

Any exact copy prepared in accordance with the provisions of this section may be ... sold ... along with the copy from which such copies were prepared, only as part of the ... sale ... of all rights in the program.[3]

Formula argues that as the rightful owner of the Wong diskette, which has recorded in it (with the consent of Apple) a copy of Apple's Applesoft and Autostart programs, Formula is "the owner of a copy of a computer program" within the meaning of Section 117. Formula goes on to argue that the silicon chips, which it makes and sells and on which it has recorded Apple's copyrighted programs, constitute permitted activity within the meaning of Section 117. Formula says that the silicon chips are "a new copy ... created as an essential step in the utilization of the [Apple] computer program in conjunction with ..." a computer.

To understand Formula's contention it is necessary to describe what a Wong diskette is. A diskette is a storage medium for data. Sometimes called a "floppy disk", it is used in conjunction with computers. Computer programs are recorded on diskettes. Some diskettes are blank when sold and the buyer records thereon such computer programs as he chooses. Others are sold with computer programs already recorded thereon.

Many different concerns have developed original computer programs which they record on diskettes and sell to the general public. Apple has licensed certain of these concerns to copy the Applesoft and Autostart programs and to record those programs on the licensees' diskettes along with the licensees' original programs. The incorporation of Apple's Applesoft and Autostart programs on such diskettes enhances the market for the diskettes among the owners of so-called Apple compatible computers. The licensees' original programs and the Apple-copyrighted programs are meant to be used together. The incorporation of the Apple programs in the diskette makes it more convenient for the computer owner to use the licensees' diskette.

Among those licensed by Apple to produce such diskettes is a Mr. T.W. Wong of Hong Kong. Wong's diskettes contain both original programs which Wong has developed and copies of the Applesoft and Autostart programs. Wong has the clear right, under his license, to sell these diskettes to Formula and Formula has the clear right to buy them from Wong and to resell them. Apple considers that Formula is in contempt, not because of their purchase or resale of the diskettes, but because Formula copies the Applesoft and Autostart programs in permanent form onto the silicon chips and thereafter sells those silicon chips.

No prior case authority has been found construing the above quoted portion of Section 117. This case is therefore one of first impression. No law review article or text

---

**2.** Subparagraph 2 deals with copying a copyrighted program for "archival purposes only". Counsel, in oral argument, agreed that subparagraph 2 has no application to the instant case. The instant opinion therefore should not be read as attempting to construe, in any way, the meaning or scope of subparagraph 2.

An opinion dealing with subparagraph 2 has been made available to the Court, *Atari, Inc. v. JS & A Group, Inc.,* Copyright L.Dec. (C.C.H.) ¶ 25, 613 (N.D.Ill.1983). That opinion is not helpful as to any matter dealt with in this opinion.

**3.** It seems unnecessary to discuss or deal with this last paragraph of the section. This last paragraph is applicable only if the offending copy dealt with was made "in accordance with" the provisions of the prior paragraph. As will be seen, the essence of the present holding is that Formula's copy is not made "in accordance with the provisions of" the first paragraph.

has been found which discusses the purpose and scope of Section 117. No regulations have been issued construing or interpreting Section 117. Section 117 was not specifically discussed in either the Senate or House debates on the Copyright Act Amendments of 1980. The section was not specifically mentioned in either the 1976 or 1980 House Committee Reports.[4] But some legislative history material does exist which is helpful in considering the present problem.

As stated in the Preliminary Injunction Opinion, the most valuable legislative history materials concerning the Copyright Act of 1976 and the Amendment of 1980 are the reports of CONTU, the National Commission on New Technological Uses of Copyright Works. CONTU's Final Report discussed the basic purpose of Section 117. It pointed out that computer programs written on paper cannot be used at all in a computer without being translated (i.e., "copied") into machine-readable form, and programs on diskettes cannot, as a practical matter, be used without first being loaded (i.e. "copied") into some memory device in the computer. Therefore, the report said Section 117 was being recommended to "facilitate use of computer programs" by allowing for such copying. CONTU Final Report 13.

The Commission went on to explain: "[o]ne who rightfully possesses a copy of a program ... should be provided with a legal right to copy it," i.e., "the right to load it into a computer ...." *Id.*

But the Commission went on to stress the limited nature of the right to copy as granted in Section 117. It said that the right exists, only *"to that extent which will permit its use by that possessor,"* and *"this permission would not extend to other copies of the program." Id.* (emphasis supplied).

Along the same line is a statement found in the transcript of CONTU Meeting No. 19 at 98–99 (January 1978):

The intent of that section [117] is to provide a *legitimate holder* of a computer program with *permission to do that copying of the program which is necessary for him to be able to use it in his computer* without running afoul of possible infringement actions. (emphasis supplied).

The limited copying permission which became Section 117 was recommended to CONTU in a report on behalf of the National Science Foundation. That report states:

In order to effectively use a copyrighted computer-readable work, an owner of a copy should have the right to make and retain *additional copies for his internal use (which would have to be destroyed when and if he resold the work),* and should have the right to use a copy in a computer. *The right to internal use should not include the right to make the work available to outsiders* via a computer network or otherwise. The assignment of usage rights to purchasers should not prevent copyright owners from retaining all exclusive rights in situations not involving transfer of ownership of copies.

R. Saltman, Computer Science and Technology: Copyright in Computer-Readable Works: Policy Impacts of Technological Change, NBS Special Publication 500–17 (Oct.1977), *reprinted in* III *Copyright, Congress and Technology: The Public Record* 368 (N. Henry ed. 1980) (emphasis supplied).

Along the same line, CONTU Commissioner Karpatkin said in a discussion of Section 117 as applied to data bases (which for present purposes are analogous to computer programs): "If a copy of the work is to be stored in a computer and *subsequently made accessible to others, its creation would have to be properly authorized by the copyright proprietor."* CONTU Final Report 39–40 (emphasis supplied).

The Court extracts from these authorities these principles concerning Section 117: 1) Only an *owner-user* of a computer who

---

**4.** Section 117 was added by amendment in 1980, replacing a previous Section 117.

rightfully owns a copy of a copyrighted program is authorized to make another copy of that program, and this copying must be necessary for him to be able to use the copyrighted program in *his* computer; 2) The copy authorized by Section 117 must be made only for the owner-user's internal use and must be destroyed when the original copyrighted work is resold; 3) The copy thus made by the owner-user cannot be made accessible to others.

■ Here, Formula is clearly not an owner-user of a computer. Formula's copying of Apple's programs cannot be construed as "internal use" by Formula. Moreover, Formula has not confined its use of the copy of Apple's copyrighted programs to Formula's own use. It has made Apple's programs available to others. Thus, under the legislative history, Formula cannot bring itself within Section 117.

■ There is an alternative ground for holding Formula in contempt. The wording of Section 117, and particularly the requirement that the "new copy" be "created as an essential step" in the utilization of the copyrighted program, implies that the type of copying authorized by the statute must be no more permanent than is reasonably necessary. Here, Formula's method of copying violates that requirement. I find that one could employ the Wong diskette in a Formula computer by use of a copying method less permanent than the one Formula has employed.

Every general purpose computer apparently contains what is called RAM. This is an acronym for Random Access Memory. RAM can be simply defined as a computer component in which data and computer programs can be temporarily recorded. Thus, the purchaser of a Wong diskette desiring to utilize in his computer all of the programs on the diskette could arrange to copy the Applesoft and Autostart programs into RAM. This would be only a temporary fixation. It is a property of RAM that when the computer is turned off, the copy of the programs recorded in RAM is lost.

Thus, in the Court's view, it cannot be persuasively argued that the permanent copying of Apple's copyrighted programs at issue here is "an essential step in the utilization" of a Wong diskette. It is a *convenient* method of utilizing such a diskette, but it is not "essential". "Essential" means indispensable and necessary. This method is neither.

One other phase of the matter is worth mentioning. Formula's legal justification for the manufacture and sale of the silicon chips in question strikes the Court as a mere subterfuge, a clever ploy.

The findings made by the Court in the Preliminary Injunction Opinion should not be forgotten. This case was initially begun because Formula sought, in several ways, to take advantage of the good name and good reputation acquired by Apple and Apple computers. Formula copied the Apple name by using the name "Pineapple" for its computers. It also copied many of Apple's most important computer programs and incorporated them, in a permanent form, within Formula's computers. By preempting the benefits of Apple's effort and work in creating these programs, Formula was selling what the public might regard as the equivalent of an Apple computer at a fraction of the price. Formula apparently felt somewhat secure in so doing because the copyrightability of computer programs had not yet been settled by the courts.

Confronted with a decision that computer programs were copyrightable and with a preliminary injunction later affirmed on appeal, Formula hit upon a pretext to avoid the impact of the injunction and to achieve the same improper objective. Formula found itself in the fortuitous circumstance of being able lawfully to acquire copies of two of Apple's most valuable programs through purchase of the Wong diskette. It then conceived the idea that Section 117 would shield it from liability even if it recorded copies of Apple's programs in a permanent form in its ROM Sets and sold these sets along with its computers and computer kits. Under this protection For-

mula figured that it would provide to its customers a computer much less expensive than Apple's, though it would contain two of Apple's most valuable copyrighted programs and would be able to do much of the work done by an Apple computer.

I find Formula's claimed justification to be a mere pretext and to be outside the protection of Section 117. I do not believe that Section 117 should be construed in a manner that would effectively emasculate the protections for computer programs contained in other sections of the Copyright Act.

■ For the reasons above stated, I find Formula to be in contempt of the preliminary injunction. The Court is aware of the requirement that the party asserting contempt must show its existence by clear and convincing evidence. *See e.g. Vertex v. Falcon Foam Plastics,* 689 F.2d 885 (9th Cir.1982). Apple has met that burden in this case. The fact that this was a first impression matter and Formula was not guided by any prior court decision does not excuse its acts or militate against those acts being held to be in contempt. The Court has taken account of these mitigating circumstances in fixing the penalty for the contempt.[5]

## EXHIBIT

### ORDER RE CONTEMPT

This cause came on to be heard on the motion of plaintiff for a judgment in contempt against defendant. The Court, upon consideration of the motion, all the papers, and oral argument, having found that defendant's copying into ROM or EPROM of plaintiff's copyrighted computer programs violates the preliminary injunction entered in this matter,

IT IS ORDERED, ADJUDGED AND DECREED:

5. After this Opinion was completed and was ready for transmittal to the publisher for publication in Federal Supplement, the Court's attention was called to an opinion in the case of *Micro-Sparc, Inc. v. Amtype Corporation,* 592 F.Supp. 33 (D.Mass.1984) (mem. Garrity, J.).

1. That defendant is in contempt of this Court for having failed to obey its decree of April 12, 1983.

2. That defendant purge itself of its contempt of Court by taking the following action:

(a) Fully comply with all of the provisions of the Court's decree of April 12, 1983;

(b) Render non-infringing, by erasure or destruction, all ROMs or EPROMs in its possession or under its custody and control containing unauthorized copies of plaintiff's copyrighted computer programs; and

(c) Pay to plaintiff sanctions on contempt in the amount of $8,179.84.

Dated: June 1, 1984.

IRVING HILL
United States District Judge

The result reached in the opinion is deemed consistent with the result here. At this time, this Court is not informed as to whether Judge Garrity's opinion will be published in Federal Supplement.