**FORESIGHT RESOURCES CORPORATION, Plaintiff,**

v.

**Larry PFORTMILLER, et al., Defendants.**

Civ. A. No. 88–2641.

United States District Court, D. Kansas.

Aug. 14, 1989.

Frederick H. Riesmeyer, II, Douglas D. Silvius, Sue A. Sperry, Spradley & Riesmeyer, Kansas City, Mo., for plaintiff.

Mark D. Hinderks, Robert M. Pitkin, Stinson, Mag & Fizzell, Overland Park, Kan., for Courtesy Escrow Co.

Ross Wichman, Anderson & Wichman, Hay, Kan., for Larry Pfortmiller.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. After considering the evidence adduced at the July 21 and 25, 1989, hearings and the parties' briefs, the court makes the following findings of fact and conclusions of law, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

### Findings of Fact

Plaintiff seeks an injunction prohibiting defendant Pfortmiller from

> altering, distributing, publishing or otherwise transferring any versions of the HK Digitizer, NeoCAD/EuroCAD or Advanced Designer to any parties either in the United States or Europe or elsewhere in the world and further prohibiting Defendant Pfortmiller and his agents from consulting with or assisting any persons already in possession of these programs in any manner whatsoever.

Plaintiff's Proposed Findings of Fact and Conclusions of Law, p. 18. Many of the relevant facts, for the purposes of ruling

on this motion, are contained in our Memorandum and Order of March 24, 1989, and need not be repeated here. In addition, however, the court finds as follows:

1. Plaintiff filed a Certificate of Copyright Registration for the *Drafix 1+* program on March 6, 1989.

2. Defendant Pfortmiller testified that, beginning with the *Drafix 1+* program, he added five files[1] of his own creation to produce the HK Digitizer. Analysis of the text strings of *Drafix 1+* and the HK Digitizer revealed that approximately 90% of the strings were identical. Hall–Kimbrell uses the HK Digitizer only in its asbestos removal consulting business. It does not sell computer software and has not attempted to sell either plaintiff's program or defendant's enhancement thereof.

3. Some of the functions contained in the new files Pfortmiller used to enhance the *Drafix 1+* program for Hall–Kimbrell were taken from another project on which defendant was working, namely, the Euro-CAD/NeoCAD project.

4. In addition to the EuroCAD/Neo-CAD project, Pfortmiller has worked on a system called Advanced Designer, which is also a CAD-type project.

5. Defendant Pfortmiller sold all of his work on both the EuroCAD/NeoCAD and Advanced Designer projects to a Dutch corporation, SPL Technologies, bv, ("SPL") in December, 1988. SPL was incorporated by Pfortmiller, Roy Smith, and Partech, bv, a Dutch venture capital corporation.

6. Pfortmiller continued to write functions for both projects through February, 1989, when he ceased work, due to ill health. As each function or set of functions was completed, Pfortmiller sent copies to either Roy Smith or SPL and erased his own backup copies.

7. There is no evidence comparing the source or object codes of any of plaintiff's programs and either the EuroCAD/Neo-CAD or Advanced Designer projects.

*Conclusions of Law*

1. The court has jurisdiction over this matter pursuant to Title 28, United States Code, section 1338(a). Venue here is proper pursuant to Title 28, United States Code, section 1400(a).

2. The relevant standards for the issuance of a preliminary injunction are clear: the moving party, plaintiff here, must establish that

(1) [it] will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F.Supp. 1172, 1180 (D.Kan.1988) (citation omitted). Primarily at issue here is the fourth element, likelihood of success on the merits.

3. Title 17, United States Code, section 117 states,

Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy *or adaptation* of that computer program provided:

(1) that such new copy *or adaptation* is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or

(2) that such new copy *or adaptation* is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

Any exact copies prepared in accordance with the provisions of this section may be leased, sold, or otherwise transferred, along with the copy from which such copies were prepared, only as part of the

---

**1.** Computer software programs consist of individual "functions," which are contained in one or more "files." Each function is first written in "source code" (readable by humans) and then translated into "object code" (readable by computers).

lease, sale, or other transfer of all rights in the program. Adaptations so prepared may be transferred only with the authorization of the copyright owner.

17 U.S.C. § 117 (emphases added). There is no question that Hall–Kimbrell is the lawful owner of a copy of the *Drafix 1+* program. Moreover, as noted in the findings of fact herein, the resulting HK Digitizer is used solely in-house by Hall–Kimbrell and has not been released to any other purchaser of plaintiff's products. Whether defendant Pfortmiller's enhancement of the *Drafix 1+* program constituted an infringement of plaintiff's copyright, therefore, depends upon whether said enhancement was an "adaptation" within the meaning of § 117 and whether defendant Pfortmiller was "authorized" to make any adaptation to Hall–Kimbrell's copy of plaintiff's program.

4. There is a dearth both of legislative history and case law interpreting the word "adaptation," as used in § 117. As to the legislative history, the House Report accompanying § 117 states that the law "embodies the recommendations of the Commission on New Technological Uses of Copyrighted Works ["the Commission"] with respect to clarifying the law of copyright of computer software." H.R.Rep. No. 96–1307 (Part I), reprinted in, 1980 U.S.Code Cong. and Ad.News 6460, 6482. Indeed, several courts have relied upon the Commission's report in interpreting § 117's provisions. *See, e.g., Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255 (5th Cir.1988); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). According to the Commission report,

> [t]he conversion of a program from one higher-level language to another to facilitate use would fall within this right [of adaptation], *as would the right to add features to the program that were not present at the time of rightful acquisition.* These rights would necessarily be more private in nature than the right to load a program by copying it and could only be exercised so long as they did not harm the interests of the copyright proprietor. Unlike the exact copies authorized as described above, this right of adaptation could not be conveyed to others along with the licensed or owned program without the express authorization of the owner of the copyright in the original work. Preparations of adaptations could not, of course, deprive the original proprietor of copyright in the underlying work. The adaptor could not vend the adapted program, under the proposed revision of the new law, nor could it be sold as the original without the author's permission. Again, it is likely that many transactions involving copies of programs are entered into with full awareness that users will modify their copies to suit their own needs, and this should be reflected in the law. The comparison of this practice to extensive marginal note-taking in a book is appropriate: note-taking is arguably the creation of a derivative work, but unless the note-taker tries to copy and vend that work, the copyright owner is unlikely to be very concerned. Should proprietors feel strongly that they do not want rightful possessors of copies of their programs to prepare such adaptations, they could, of course, make such desires a contractual matter.

Final Report of the National Commission on New Technological Uses of Copyrighted Works 13–14 (1978) (emphasis supplied, footnotes omitted).

With respect to the case law, there is no clear precedent to guide the court in this suit. Some courts have given § 117 a comparatively narrow interpretation. *See, e.g., Micro-Sparc, Inc. v. Amtype Corp.*, 592 F.Supp. 33 (D.Mass.1984); *Midway Mfg., Co. v. Strohon*, 564 F.Supp. 741 (N.D.Ill. 1983); *Hubco Data Prods. Corp. v. Management Assistance, Inc.*, 219 U.S. P.Q. 450, 1983 WL 1130 (D. Idaho 1983). However, those cases are distinguishable on the grounds that they involved situations where the defendant's alterations to the plaintiff's software were designed for widespread marketing to third parties. Moreover, the weight of the more recent cases and scholarly commentary is on the

side of reading § 117 broadly, in conformity with the apparent intent of the Commission. *See, e.g., Vault, RAV Communications, Inc. v. Philipp Bros., Inc.,* No. 87 CIV 3366 (LLS), 1988 WL 36174 (S.D.N.Y. April 13, 1988), and Stern, *Section 117 of the Copyright Act: Charter of Software Users' Rights or an Illusory Promise?,* 7 W. New Eng.L.Rev. 459 (1985).

Construing § 117 to cover the enhancements defendant made to Hall–Kimbrell's copy of plaintiff's program, in these circumstances, would serve two important goals of the copyright laws. On the one hand, allowing sophisticated software users to enhance copies of copyrighted programs they have purchased eliminates the need to choose between either buying the latest version of a program or possibly infringing the program's owner's copyright. At the same time, allowing such enhancements to be used only in-house preserves the market for improvements made by the copyright holder.

Like what constitutes an "adaptation," there is some question as to the nature of the "authorization" that will suffice to bring an adaptation within the exception carved out by § 117. Again, scholarly commentary suggests that § 117 should not be restricted to prohibit owners from authorizing custom-made enhancements to their copies of copyrighted programs:

> A large number of computer program owners, perhaps the overwhelming majority, are not capable of making their own adaptations to their computer programs. Typically, such users are not computer programmers, and they lack the skills and equipment necessary to make adaptations to existing computer programs. In the few cases involving vicarious activity that have been decided under section 117 to date, the courts have held that it is copyright infringement for a third party to adapt or copy a computer program for the owner of a computer program. The effect is to make the adaptation right under section 117 an illusory promise.

Stern, *Section 117 of the Copyright Act: Charter of Software Users' Rights or an*

*Illusory Promise?,* 7 W. New Eng.L.Rev. 459, 468 (1985) (footnote omitted).

Plaintiff claims that Hall–Kimbrell never authorized defendant to make the enhancements at issue. However, the testimony of Hall–Kimbrell's representative on this point was contradictory, and the purchase order describing the work defendant was to do suggests that he was asked to add five functions to something already in existence, not provide five free-standing functions. *See* Plaintiff's Exhibit 1.

■ While plaintiff also claims that defendant Pfortmiller's enhancements violate the licensing agreement accompanying the *Drafix 1+* program, there is some reason to question the enforceability of any such agreement. *See Vault, supra,* at 270 (holding that restriction against decompilation or disassembly, contained in license agreement authorized under Louisiana law, was unenforceable due to federal preemption of Louisiana statute.) Even if the agreement is enforceable, the court does not believe that plaintiff's right to improve or enhance its products is exclusive.

■ In sum, the court holds that plaintiff has failed to demonstrate a substantial likelihood of success on the merits of its claim that the HK Digitizer violates either plaintiff's copyright or licensing agreement. Nonetheless, and although there was no evidence that defendant has sold or intends to sell these enhancements of plaintiff's program to any other third party, the court will enjoin defendant from selling these particular enhancements of plaintiff's products to other entities.

■ 5. Plaintiff's request for an injunction with respect to the NeoCAD/EuroCAD and Advanced Designer projects must be denied. In general,

> A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying.

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985) (citations omitted). When a plaintiff has made out a prima facie case of infringement, irreparable harm will usually be presumed,

for the purposes of injunctive relief. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). Because defendant does not dispute that plaintiff has a valid copyright to the *Drafix 1+* program, the only question is whether defendant has copied that program.

The only evidence that plaintiff has that either the NeoCAD/EuroCAD or Advanced Designer projects infringe its copyrights is circumstantial and, at best, ambiguous. Certainly, the word "NeoCAD" appears in the enhancements defendant made to the *Drafix 1+* program. However, the inference that NeoCAD/EuroCAD is completely original, but had certain functions that were useful in modifying the *Drafix 1+* program, is at least as plausible as the reverse inference that plaintiff wishes the court to draw, namely, that the NeoCAD/EuroCAD project is substantially derived from the *Drafix 1+* program. Indeed, one of plaintiff's witnesses, Charles Atwood, effectively admitted that, in the absence of any source or object code data on the NeoCAD/EuroCAD project there was no way of determining the relationship between the programs. Moreover, the fact that defendant sent the finished pieces of his projects to Europe, while perhaps sanctionable discovery activity,[2] hardly supports the conclusion that those projects are copies of plaintiff's program. In short, there is no persuasive evidence linking any of plaintiff's copyrighted programs to any of the material defendant has sent to Europe. Under these facts, the court concludes that plaintiff has failed to make out a prima facie case of copyright infringement and therefore denies its motion for a preliminary injunction as to the NeoCAD/EuroCAD and Advanced Designer projects.

■ 6. Finally, plaintiff asserts a state law claim for violation of the Uniform Trade Secrets Act, as adopted in Kansas, K.S.A. (1988 Supp.) 60–3320 *et seq.* This claim is based precisely upon the same facts as those underlying plaintiff's copyright infringement claims. In holding a Louisiana statute preempted by federal copyright law, the court in *Vault, supra,* noted that

> In *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Supreme Court held that "[w]hen state law touches upon the area of [patent or copyright statutes], it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law.

*Vault,* 847 F.2d at 269 (citations omitted). It is true that state trade secret law is not necessarily preempted by federal copyright law. *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). However, granting plaintiff an injunction in this case, based upon the Kansas trade secret law, would have the effect of denying defendant the benefit of § 117, with respect to the HK Digitizer claim. With respect to the NeoCAD/EuroCAD and Advanced Designer projects, moreover, the evidence of a misappropriation of a trade secret is as lacking as the evidence of a copyright infringement. Accordingly, plaintiff's motion based upon Kansas trade secret law must be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction is granted in part and denied in part. Defendant is enjoined from the further production or sale of the HK Digitizer enhancements of plaintiff's *Drafix 1+* program to any entity, other than Hall–Kimbrell. The present bond posted by plaintiff shall continue in effect until further order of the court.

---

**2.** Indeed, pending before the court is plaintiff's motion for sanctions against defendant Pfortmiller for destruction and/or removal from this country of software that is potentially relevant to this litigation. Because that issue is more properly treated as a discovery matter, the court will not address the question in this order.