Clifford Scott **AYMES**, Plaintiff–Appellant,

v.

Jonathan J. **BONELLI**, doing business as Island Swimming Sales, Inc., and Island Recreational, Defendants–Appellees.

No. 562, Docket 94–7470.

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1994.

Decided Jan. 30, 1995.

**24**

Clifford Scott Aymes, pro se.

Susan E. McHale, New York City (Thomas A. O'Rourke, Wyatt, Gerber, Burke & Badie, of counsel), for defendant-appellees.

Before: PRATT, ALTIMARI, and JACOBS, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff-appellant Clifford Scott Aymes appeals from a judgment entered in the United States District Court for the Southern District of New York, dismissing his copyright infringement action. Aymes initially filed his complaint in 1985 against defendants-appellees Island Recreation Inc. ("Island") and its president Jonathan Bonelli, alleging that they had infringed his copyright to certain computer programs he had written for Island between 1980 and 1982. The programs, collectively called CSALIB, were designed to facilitate Island's inventory, record-keeping, and sales efforts in Island's business of operating a chain of retail stores selling swimming pools and related supplies. Aymes alleged, among other things, that defendants had violated oral commitments Bonelli made to use CSALIB on only one computer at Island and to grant Aymes the exclusive right to modify the programs. This is the second time that this matter has come to us for review, see Aymes v. Bonelli, 980 F.2d 857 (2d Cir.1992), therefore we presume familiarity with the facts and circumstances of this case.

Following multiple pretrial motions, the district court held a bench trial on the issue of infringement liability on September 10, 1991. By Memorandum Opinion and Order dated September 24, 1991, the district court dismissed Aymes's complaint. It found that Bonelli never agreed to limit his right to use the programs in a way that "would prohibit him from using [the programs] for any other corporation he might form or from expanding his data processing capability by adding a second computer." In addition, the district court found that "there never was a contractual commitment by Bonelli that Island would never in the future use any other programmer to make modifications to the programs."

In any event, the district court held, Island was the rightful owner of the program, under 17 U.S.C. § 201(b) (1988), because Aymes had prepared it in his capacity as an employee of Island. In its Memorandum on Reconsideration dated November 6, 1991, the district court adhered to its finding that Aymes was an employee whose work belonged to Island. Lastly, by Memorandum Opinion and Order dated December 18, 1991, the district court awarded Aymes $34,549.13 in monies due for his work on the program plus interest.

On the first appeal, we reversed the judgment of the district court and remanded for further proceedings. Aymes, 980 F.2d at 865. We held that under Community for Creative Non–Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), Aymes as a matter of law was an independent contractor, rather than Island's employee. We therefore found that, as author of the program, Aymes owned the copyright, and we remanded for a determination of Aymes's infringement claim. We noted, however, that based on the district court's earlier findings, it appeared "unlikely" that Aymes would prevail. An additional issue that required consideration on remand was whether Bonelli was a "joint owner" of the copyright under 17 U.S.C. § 201(a) because of his contribution to its creation.

On remand, the district court again dismissed Aymes's complaint, noting that "[a]s the Second Circuit anticipated, having considered the issues before me, I conclude that Mr. Aymes has not prevailed on his infringement claim." Agreeing with a finding from the 1988 district court order denying defendants' motion for summary judgment, the district court stated, "[T]he evidence is clear that Mr. Aymes sold the program to Island." The district court also reiterated the findings from its 1991 post-trial decision. The district court found it unnecessary to reach the issue of whether Island could have used the pro-

gram for its subsidiary corporations, because it found that CSALIB had been used only by one corporation and on one computer. Because of the absence of evidence of any copyright infringement, the district court did not reach the joint-ownership issue.

On this appeal, Aymes argues principally that he owns the copyright to CSALIB and that any modifications that Island made to the program, even for its own internal purposes, constituted copyright infringement. We affirm the judgment of the district court for the reasons discussed below.

## DISCUSSION

Aymes contends that the defendants' modifications to CSALIB constituted copyright infringement under 17 U.S.C. § 106 because he, as the owner of the copyright to CSALIB, had the exclusive right to prepare derivative works. 17 U.S.C. § 106 provides:

> Subject to sections 107 through 120, the owner of [a] copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;

17 U.S.C. § 106(1) & (2) (1977).

In this case, Island does not dispute that it altered CSALIB and thereby created a "derivative work" from the original CSALIB program that Aymes developed for Island. *See* 17 U.S.C. § 101 (defining "derivative work" as "a work based upon one or more preexisting works," including "any ... form in which a work may be recast, transformed, or adapted"). Unless excused by another statutory provision, Island's modification would constitute an infringement of Aymes's copyright. *See Gilliam v. American Broadcasting Cos.*, 538 F.2d 14, 21 (2d Cir.1976) ("unauthorized editing of the underlying work, if proven, would constitute an infringement of the copyright"); 17 U.S.C. § 106 (owner of copyright has exclusive right to prepare derivative works).

There is another statutory provision, however, § 117, which provides:

Limitations on exclusive rights: Computer programs

Notwithstanding the provisions of section 106, it is *not an infringement for the owner of a copy of a computer program* to make or authorize the making of another copy *or adaption of that computer program provided:*

(1) that *such a new copy or adaption is created as an essential step in the utilization* of the computer program in conjunction with a machine and that it is used in no other manner, or

(2) that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

Any exact copies prepared in accordance with the provisions of this section may be *leased, sold,* or otherwise *transferred,* along with the copy from which such copies were prepared, only as part of the lease, sale, or other transfer of all rights in the program. Adaptations so prepared may be *transferred* only with the authorization of the copyright owner. (Amended December 12, 1980, Public Law 96–517, § 10(b), 94 Stat. 3028).

17 U.S.C. § 117 (emphasis added).

■ Defendants contend their rights are determined by this section, rather than § 106, because (1) they are "the owner[s] of a copy of a computer program" and (2) they made modifications "as an essential step in the utilization of CSALIB." As to the defendants' first claim, as the district court noted early in this litigation, "the plaintiff cannot realistically dispute the fact that he sold defendants the computer program and that defendants are therefore the rightful owners of the program." True, the district court erroneously viewed Aymes as an employee; but even as an independent contractor, Aymes was paid by Island to design a program specifically for Island's use, and for those efforts he earned in excess of $70,000. Island, therefore, had a right to use the program for its own business purposes.

■ As to Aymes's second contention, an "owner of a copy of a computer program" is

authorized to make a "new copy or adaption [if it] is created as an essential step in the utilization of the computer program ... and ... it is used in no other manner." 17 U.S.C. § 117(1). Section 117 was implemented. to follow "the recommendations of the National Commission on New Technological Uses of Copyrighted Works [the "CONTU"] with respect to clarifying the law of copyright ownership of computer software." H.R.Rep. No. 1307, 96th Cong., 2d Sess., Pt. I, at 23 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6482; *Vault Corp. v. Quaid Software Ltd.,* 847 F.2d 255, 260 (5th Cir.1988); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 703 (2d Cir.1992) ("Congress adopted CONTU's suggestions and amended the Copyright Act").

The CONTU issued a final report, ("Contu Report"), Final Report of the National Commission on New Technological Uses of Copyrighted Works 30 (1978), which recommended that congress amend the copyright law so that a rightful possessor of a copy of a computer program would be able to make certain copies and adaptations of the program without infringing the program's copyright. The Contu Report states that "persons in rightful possession of copies of programs [should] be able to use them freely without fear of exposure to copyright liability." Contu Report at 31. Buyers should be able to adapt a purchased program for use on the buyer's computer because without modifications, the program may work improperly, if at all. No buyer would pay for a program without such a right. *Id.* at 32.

Bonelli and Island, as rightful owners of a copy of CSALIB, did not infringe upon Aymes's copyright, because the changes made to CSALIB were necessary measures in their continuing use of the software in operating their business. 17 U.S.C. § 117(1) (1992). The modifications here fall easily within the contemplation of Contu:

> Because of a lack of complete standardization among programming languages and hardware in the computer industry, one who rightfully acquires a copy of a program frequently cannot use it without adapting it to that limited extent which will allow its use in the possessor's computer.

> The copyright law, which grants to copyright proprietors the exclusive right to prepare translations, transformations, and adaptations of their work, should no more prevent such use than it should prevent rightful possessors from loading programs into their computers. Thus, a right to make those changes necessary to enable the use for which it was both sold and purchased should be provided.

Contu Report at 32.

According to the Contu Report, copyright laws should reflect the fact that transactions involving computer programs are entered into with "full awareness that users will modify their copies to suit their own needs." *Foresight Resources Corp. v. Pfortmiller,* 719 F.Supp. 1006, 1009 (D.Kan.1989) (quoting Contu Report). This right of adaption includes "the right to add features to the program that were not present at the time of rightful acquisition", *id.,* and was intended to apply to modifications for internal use, as long as the adapted program is not distributed in an unauthorized manner. *See id.* at 1009–10; *Apple Computer, Inc. v. Formula Int'l, Inc.,* 594 F.Supp. 617, 621 (C.D.Cal. 1984). The district court found that Island used the program for internal purposes only and did not distribute the program to its subsidiaries.

Nor does it appear that the modifications to the program were for any purpose other than Island's internal business needs. The original program made provisions for late charges, and Island did alter CSALIB to keep it current from year to year and to maintain the viability of the original software when Island upgraded its computer to accommodate successive generations of IBM systems. In this connection, the Contu Report also comments:

> The conversion of a program from one higher-level language to another to facilitate use would fall within this right [of adaption], *as would the right to add features to the program that were not present at the time of rightful acquisition ....* Again, it is likely that many transactions involving copies of programs are entered into with *full awareness that users will modify their copies to suit their own*

*needs,* and this should be reflected in the law.... Should proprietors feel strongly that they do not want rightful possessors of copies of their programs to prepare such adaptations, they could, of course, make such desires a contractual matter.

Contu Report at 13–14 (emphasis added) *quoted in, Foresight Resources,* 719 F.Supp. at 1009.

Although at the time the parties entered into an agreement for the creation of CSAL-IB they orally agreed that the program would be used on one Island computer, the district court found that the oral agreement had not been breached. Moreover, both parties knew that modifications would be essential for the continued functioning of the program on an upgraded computer system, and that, in fact, the system was continually being upgraded in order to keep up with Island's growth. Until this lawsuit Aymes never sought to prohibit others from making modifications to the programs, although for some time he had been aware that Island had hired another programmer to convert and modify CSALIB. Indeed, Aymes was present and raised no objection while some of the modifications were being made by Island's employees.

Finally, there is no merit to Aymes's suggestion that defendants infringed his copyright because they used the programs in an unauthorized manner and for an external purpose. *Foresight Resources,* 719 F.Supp. at 1009; *Apple Computer,* 594 F.Supp. at 621. The district court found that Island used CSALIB for internal business purposes only and did not distribute the program to its subsidiaries. These findings are not clearly erroneous. Nor is there evidence that the modified program was marketed, manufactured, distributed, transferred, or used for any purpose other than Island's own internal business needs. *See Id.* ("the copy authorized by Section 117 must be made only for the owner-user's internal use").

We have considered Aymes's other contentions and find them to be similarly without merit.

## CONCLUSION

In sum, defendants properly modified their copy of CSALIB to suit their own needs; Island's adaptations were essential to allow use of the program for the very purpose for which it was purchased. Island used CSALIB on only one computer for one corporation and defendants did not infringe Aymes's copyright.

The judgment of the district court is therefore affirmed.